1997 OK 87

STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

**Tom J. WILCOX, Respondent.**

SCBD No. 4189.

Supreme Court of Oklahoma.

July 1, 1997.

Dan Murdock, Mike Speegle, Oklahoma Bar Association, Oklahoma City, for Complainant.

Tom J. Wilcox, Pro Se, Midwest City, for Respondent.

HODGES, Justice:

## I. PROCEDURAL HISTORY

¶1 On July 16, 1996, the Oklahoma Bar Association (OBA) filed a complaint against the respondent, Tom J. Wilcox, alleging violations of rules 1.15 and 8.4 of the Oklahoma Rules of Professional Conduct (ORPC), Okla. Stat. tit. 5, ch. 1, app. 3A (1991), and rules 1.4 and 5.2 of the Rules Governing Disciplinary Proceedings (RGDP), Okla.Stat. tit. 5, ch. 1, app. 1–A (1991). When the OBA took the respondent's deposition, he invoked his rights under 6.11(d) of the RGDP.[1]

¶2 The Professional Responsibility Tribunal (PRT) held a hearing. At the hearing the respondent again sought to invoke his rights under rule 6.11(d) of the RGDP. Thereafter, the PRT issued its report. The PRT found that the respondent had violated rules under the ORPC and the RGDP. The PRT recommended disbarment.

## II. FACTS

¶3 The Oklahoma Pain Management Clinic, Inc. (Clinic) complained to the OBA that it had received six checks drawn on the respondent's trust account which were returned for insufficient funds. The checks were issued in payment of medical bills of respondent's clients. Copies of the returned checks were attached to the letter.

¶4 The OBA sent the respondent a notice of the grievance with a copy of the letter from the Clinic attached. On January 8, 1996, the respondent countered: "As [the Clinic's] letter sets forth, [its] office received returned checks that were not paid." The respondent enclosed a letter from the Clinic stating that the accounts had been satisfied and that it wished to withdraw its grievance.

¶5 The OBA sent a notice to the respondent that his letter of January 8 was insufficient under rule 5.2 of the RGDP. Thereafter, the respondent acknowledged in writing that the Clinic had treated six of his clients

after they were involved in car accidents. The respondent also stated that the clients' had settled with their claims against the persons and companies financially responsible for their injuries. Further, the settlement payments were deposited into his trust account, and he had sole control of the settlements. He reported that he had made disbursements to each of his clients from the settlement proceeds.

¶6 The respondent further stated: "I have no valid explanation for allowing my account to become overdrawn. My inattention to my trust account and preoccupation with other matters resulted in insufficient balance being maintained in this account." He enclosed copies of cashier's checks purchased from his trust account to replace the returned checks. The respondent also attached copies of the bank's statements of his trust account. When the respondent was disposed and questioned about the grievance, he invoked his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and rule 6.11 of the RGDP.

¶7 The OBA called a representative of the Clinic, the respondent, and its investigator as witnesses at the hearing before the PRT. The representative of the Clinic, Karen Lesperance, testified the Clinic had treated some of the respondent's clients and the respondent had written checks on his trust account which had been returned for insufficient funds. The OBA presented as evidence a settlement check which had been made payable to the order of one of the respondent's clients, the respondent, and a doctor at the Clinic. Ms. Lesperance testified that the doctor's endorsement on the check was not his signature.

¶8 On cross-examination, the respondent, acting as his own attorney, questioned Ms. Lesperance about the number of clients he had referred to the Clinic and his payment record. He specifically asked: "Now, prior to the six checks that were returned

---

1. Rule 6.11(d) of the RGDP provides:

"The respondent may be called as a witness either by the prosecution or on his own behalf, and when called upon to give testimony, the respondent may not decline to answer any rele-vant question unless he personally states that his answer thereto might disclose matters that are privileged or that would tend to incriminate him or show him to be guilty of any act or offense that would be grounds for discipline."

insufficient, was there any problem with any payments of any of the other services that Dr. Ellis had on the rest of the clients Dr. Ellis treated?" The respondent also asked Ms. Lesperance the amount owed to the Clinic from the $5,000 check on which Dr. Ellis' name had been forged and whether the accounts for the six clients had been satisfied.

¶ 9 The OBA then called the respondent to testify. After answering several general questions, the OBA's counsel asked respondent what employees were working in his office at the time of the settlements. The respondent invoked the rule 6.11(d) privilege against self-incrimination and asserted that the information was subject to attorney-client privilege. The PRT then ruled that the attorney-client privilege did not protect the testimony of the attorney but only that of the client. The PRT also ruled that because the respondent had questioned Ms. Lesperance about his payment record that he had "opened the door" to answering questions which were incriminating. The PRT ordered the respondent to answer all questions even though he asserted a continuing objection.

¶ 10 The OBA called its investigator, Mr. Robert Dale Hanks. Mr. Hanks reviewed the respondent's actions during the information gathering process. On cross-examination, Mr. Hanks testified that no formal complainants had previously been filed against the respondent.

## III. THE FIFTH AMENDMENT AND RULE 6.11 OF THE RGDP

 ¶ 11 The Fifth Amendment of the United States Constitution protects individuals from being required to implicate themselves in a crime. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The Fifth Amendment rule against self-incrimination applies to lawyer disciplinary proceedings and to production of documents, as well as speech. *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). An attorney cannot be disbarred for merely asserting the privilege. *Id.*

 ¶ 12 At the hearing before the PRT, the respondent did not invoke the protections of the Fifth Amendment but relied on rule 6.11(d) of the RGDP.[2] Rule 6.11(d) provides more extensive protection than the Fifth Amendment by protecting testimony regarding acts which although not criminal, could lead to discipline as well as testimony which could lead to criminal prosecution. Rule 6.11(d) protects attorneys from being required to testify regarding matters that are privileged or that would be grounds for discipline. In contrast, rule 5.2 of the RGDP requires a lawyer to "make a written response which contains a full and fair disclosure of all the facts and circumstances" regarding the allegations unless the refusal is based on express constitutional grounds.

¶ 13 This Court clarified the relationship between rule 6.11(d) and rule 5.2 in *State ex rel. Oklahoma Bar Ass'n v. Moss*, 794 P.2d 403, 408–09, 1990 OK 22. In *Moss*, the attorney had disclosed incriminating facts during the investigatory stage in compliance with rule 5.2. This Court held the disclosure during the investigatory stage did not constitute a waiver of the rule 6.11(d) privilege. The reasoning is that the rule 6.11(d) privilege would be meaningless if "a lawyer could not invoke Rule 6.11(d) to avoid disclosure of violations of disciplinary rules." *Id.* 794 P.2d at 409.

¶ 14 Rule 6.11(d) does not give a lawyer the right to refuse to be called as a witness. *Id.* at 409–10. However, the lawyer may refuse to answer specific questions which would require the disclosure of matters which are privileged or would tend to incriminate the lawyer of an offense which would be grounds for discipline. *Id.* at 410. When a respondent invokes the privilege, the PRT determines whether the invocation of the privilege is proper. *Id.* If the lawyer persists in invoking the privilege after the PRT's determination that the privilege is unavailable, rule 6.11(c) of the RGDP provides that the matter may be referred to the Chief Justice of this Court for assignment to a district court judge for disposition of the propriety of the invocation of the privilege.

---

**2.** We have adopted Fifth Amendment jurisprudence in our analysis of the rule 6.11(d) privileges. *See State ex rel. Oklahoma Bar Ass'n v. Moss*, 794 P.2d 403, 409, 1990 OK 22.

The PRT should have used this procedure rather than continuing to insist that the respondent testify after he had persisted in invoking the rule 6.11(d) privilege.

¶ 15 When asked for the name of employees in his firm at the time of the alleged misconduct, the respondent invoked the rule 6.11(d) privilege based on attorney-client privilege and his right to refuse to answer questions which would tend to show acts which could subject him to discipline. The PRT took the position that the attorney-client privilege went only to the client and that respondent's questions to Ms. Lesperance constituted a waiver of the respondent's right to refuse to answer questions which would tend to show he had committed an act which could subject him to discipline.

¶ 16 The PRT misunderstood the rule 6.11(d) privilege. As to the attorney-client privilege, rule 6.11(d) allows a lawyer to refuse to testify to matters that are privileged. The OBA did not present any evidence that any of the respondent's clients had authorized the information be divulged. The PRT incorrectly ruled that the respondent could not invoke a privilege against disclosing matters which were subject to the attorney-client privilege.

¶ 17 Likewise, the PRT incorrectly ruled the respondent had waived the rule 6.11(d) privilege against answering questions which would tend to show him guilty of any act that would be grounds for discipline. The PRT ruled because the respondent had questioned Ms. Lesperance regarding his payment record, he had waived his right against being compelled to answer questions which would be incriminating.

¶ 18 When a lawyer testifies regarding facts showing a violation of the disciplinary rules, the lawyer waives the right to refuse to answer questions regarding the facts surrounding the violation. *Moss,* 794 P.2d at 410. When the respondent, acting *pro se,* asked questions of Ms. Lesperance on cross-examination, he was not giving testimony; he was asking questions. He was not

divulging information which would tend to show that he had engaged in conduct which would subject him to discipline.; he was asking questions in the role of counsel. If the respondent had been represented by counsel, counsel's questions would not have acted as a waiver of the respondent's privilege. Likewise, the respondent's questions of Ms. Lesperance did not act as a waiver.

¶ 19 If this Court were to conclude that questions to a witness on cross-examination acted as a waiver, a respondent acting *pro se* would have no way of disputing the veracity of the witnesses testifying against him. The witnesses' testimony could not be challenged and would stand unimpeachable even if false. To hold that questions to witnesses waived the rule 6.11 privilege in this situation would result in the respondent being deprived of his right to cross-examine witnesses and test the truthfulness of their statements. *See* Rule 6.12(a) of the RGDP.

¶ 20 After a review of respondent's testimony, we find that most of respondent's coerced testimony was protected by rule 6.11(d) and should be excluded from consideration. Thus this Court will not consider, in its de novo review, respondent's testimony which should have been protected under rule 6.11.

## IV. THE PROPERLY ADMITTED EVIDENCE

¶ 21 Even though most of the respondent's testimony is excluded from our consideration, the respondent did not raise a rule 6.11(d) objection to the admission of his bank record's or other documents furnished during the investigatory process. Neither does the respondent raise the issue of their exclusion before this Court. Thus we may consider these documents which were properly admitted into evidence.[3]

¶ 22 The properly admitted evidence shows that the respondent had six clients which he referred to the Clinic for medical evaluation. The respondent deposited the settlement checks in his trust account. He

---

3. Had the respondent objected to the admission of these records into evidence under rule 6.11(d) and the rule in *Moss,* we could not now consider

them. However, he did not raise a rule 6.11(d) objection and they were admitted at the conclusion of the respondent's testimony.

was to pay the Clinic for the medical costs incurred on behalf of these six clients. When the respondent issued the checks drawn on his trust account to pay the medical costs, they were returned for insufficient funds. After the Clinic filed a complaint with the OBA, the respondent issued cashier's checks to cover the six accounts.

¶ 23 One of the settlement checks was made out to one of respondent's clients, her attorney, and Dr. David Ellis, one of the doctors at the Clinic. The PRT admitted an affidavit of Dr. Ellis that he did not endorse the check or authorize that it be endorsed by anyone else. Disregarding the respondent's improperly solicited testimony, the facts show that Dr. Ellis' endorsement was unauthorized.

¶ 24 The evidence showed when the OBA requested information from the respondent regarding the grievance, he responded with documents showing the insufficient checks had been paid. The OBA's letter is dated December 29, 1995, and the respondent's reply letter is dated January 8, 1996. By a letter dated January 10, 1996, the OBA informed the respondent that the information that he had furnished was insufficient. On January 22, 1996, the respondent furnished the OBA with a detailed account of facts and circumstances pertaining to the complaint and attached the requested documents.

## V. MITIGATION

¶ 25 Other than the six dishonored checks, there is no evidence of professional misconduct by the respondent for the thirteen years that he has been practicing law. The respondent has reimbursed the Clinic for the dishonored checks. The Clinic has requested that the complainant be withdrawn. The representative of the Clinic testified the Clinic would be willing to accept the respondent's clients and the respondent would pay the bill.

## VI. DISCIPLINE

¶ 26 The properly considered evidence is sufficient to show that the respondent either commingled the trust account funds or mishandled his clients' fund. It also shows that Dr. Ellis' endorsement on a settlement check was unauthorized. Thus, the evidence is clear and convincing that the respondent violated rules 1.15 and 8.4 of the ORPC and rule 1.4 of the RGDP. However under the facts, the OBA did not show by clear-and-convincing evidence that the respondent violated rule 5.2 of the RGDP by refusing to cooperate in its investigation.

¶ 27 The goal of discipline is to maintain the integrity of the Bar and to protect the public and the courts. *State ex rel. Oklahoma Bar Ass'n v. Peveto,* 620 P.2d 392, 395, 1980 OK 182. "Part of [this] purpose is deterrence of like behavior by both the respondent and other members of the Bar." *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 824 P.2d 1127, 1129, 1991 OK 132. In order to carry out these goals, discipline for mishandling client funds has ranged from censure to disbarment depending on the culpability. *State ex rel. Oklahoma Bar Ass'n v. Dunlap,* 880 P.2d 364, 366, 1994 OK 81.

¶ 28 After reviewing the record *de novo* and excluding the respondent's testimony which was subject to the rule 6.11(d) privilege and to which he timely objected, we find that the respondent has been proven by clear-and-convincing evidence to have violated rules 1.15 and 8.4 of the ORPC and rule 1.4 of the RGDP. Considering the respondent's offences and the mitigating factors, a one-year suspension will accomplish the goals of discipline. Under rule 6.16 of the RGDP, the respondent is responsible for the costs of these proceeding.

## VII. CONCLUSION

¶ 29 The respondent, Tom J. Wilcox, is ordered suspended from the practice of law for one year from the date this opinion becomes final. The respondent is further ordered to pay the costs of this proceeding in the amount of $1,052.35 within sixty days of the date this opinion becomes final.

RESPONDENT SUSPENDED FROM PRACTICE OF LAW FOR ONE YEAR; COSTS IMPOSED.

¶30 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER and WATT, JJ., concur.

¶31 HARGRAVE, J., concurs in result.

¶32 OPALA, J., with whom SIMMS, J., joins, concurs in part, dissents in part. I concur in today's imposition of discipline; I would suspend the respondent for a much longer period.

¶33 ALMA WILSON, J., concurs in part; dissents in part. I would impose a six month suspension.