1998 OK 123

STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Danny Ray BROWN, Respondent.

SCBD No. 4333.

Supreme Court of Oklahoma.

Dec. 8, 1998.

Rehearing Denied Feb. 16, 1999.

See also, 773 P.2d 751.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, For Complainant,

Danny Ray Brown, Lawton, Oklahoma, Pro Se.

ALMA WILSON, Justice.

¶1 The Complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Danny Ray Brown, with one count of misconduct. The Bar Association alleges that the respondent falsely endorsed another's signature on a settlement check, and failed to satisfy the lien on the check asserted by the U.S. Army for $439.00, representing charges for medical treatment received by the respondent's client, all in violation of the Oklahoma Rules of Professional Conduct

(ORPC), 5 O.S.1991, ch.1, app. 3–A, Rules 1.15,[1] and 8.4(c),[2] and the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.Supp.1998, ch. 1, app. 1–A, Rules 1.3[3] and 1.4.[4]

¶2 The day of the hearing, the respondent stipulated that he had entered the unauthorized signature on the settlement check. The Bar Association announced that it could not establish a violation of Rule 1.4, RGDP. The respondent was the only witness called. After the hearing the trial panel found that the respondent had violated Rules 1.15(b) and 8.4(c), ORPC, and Rule 1.3, RGDP. The trial panel found that disbarment would have been justified, but for the candor of the respondent, and accordingly the trial panel recommended that the respondent be suspended for two years and one day.

## I.  FACTS

¶3 The parties filed stipulations to the following facts on May 7, 1998. The respondent has been licensed to practice law in Oklahoma since March 20, 1973. On September 3, 1995, the respondent's client, L.C., was involved in an automobile accident in Lawton, Oklahoma. She received medical treatment for her injuries at Reynolds Army Hospital on Ft. Sill, Oklahoma. In March 1996, the respondent was employed to represent her in her claim for personal injuries. The U.S. Army asserted a lien for $439.00, representing the charges for the treatment

1. Rule 1.15(b), ORPC, provides: "(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

2. Rule 8.4(c) ORPC, provides: "It is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; ..."

3. Rule 1.3, RGDP, provides: "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of

his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

4. Rule 1.4(b), RGDP, provides: "Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services."

she received at the hospital. The respondent negotiated a settlement with the party responsible for the accident, and received $3,000.00 in July 1996. The U.S. Army assigns a Recovery Judge Advocate to recover costs of medical treatment. At the time the respondent received the settlement check, the Recovery Judge Advocate was Captain Thomas Serrano, who had replaced Captain Jeff Sexton in that position.

¶4 On July 29, 1996, the settlement check dated June 12, 1996, was deposited in the respondent's trust account with the requisite signatures affixed, including "Dept. of Army By Capt. Jeff Sexton." That endorsement had not been authorized by the United States Government. On August 19, 1996, the respondent disbursed the net proceeds of the settlement to his client, a check in the amount of $1,811.00. As a result of his own negligence, the respondent closed his file without delivering a check for $439.00 to the U.S. Army for the payment of its medical lien.

¶5 In March 1997, the respondent was contacted by the Fort Sill Claims office regarding the medical lien, and after reviewing his records and determining that the bill had not been paid, the respondent paid the U.S. Government from his trust account by check in the amount of $439.00. On April 15, 1997, the respondent received the Bar Association Complaint, which is the basis for this proceeding.

¶6 On April 28, 1997, the U.S. Government contacted the respondent regarding this matter, and on June 10, 1997, he voluntarily met with government officials including Captain Serrano at the Ft. Sill Claims office. At the conclusion of the meeting, all parties agreed to settle the matter, and the respondent subsequently delivered to the U.S. Government a cashier's check in the amount of $5,000.00, which was accepted as a final settlement for any and all claims the U.S. Army had in the matter.

¶7 The Bar Association and respondent subsequently stipulated to the following additional facts, filed May 27, 1998. The respondent entered the unauthorized signature of Captain Sexton on the settlement check, and deposited it in his trust account. Between the date of deposit and April 1997, the balance of his trust account was never less than $439.00, which was the amount of the U.S. Government's lien.

¶8 The respondent testified at the hearing that after he originally received the settlement check, his client was having a change of heart about accepting it. The respondent said there were discussions back and forth, that at some point her husband got involved and she changed her mind about settling. The respondent held onto the check for a period of time, and his client did come back in to accept the settlement, but she was now in a hurry to take the money because her husband had been stationed in Germany and she was to meet him there. The respondent testified that he tried to get in contact with someone at Ft. Sill to endorse the check, but the responsible officer was gone and would not be back in time before his client left for Germany. At that time the respondent forged the signature of Captain Sexton, and deposited the check in his trust account. He testified that through negligence, he failed to send the Army the $439.00 claim, which remained in his trust account for about nine months until the Army called him. The respondent testified that he had no evil intent to deprive the government of their money, but was facilitating the process of getting his client her funds before she left for Germany. He admitted that he went about this in the wrong way. He testified that he had handled many of these cases before, reimbursing the Army thousands of dollars over the years, and that he did not typically forge government endorsements before reimbursing the U.S. Army. At the end of the hearing, the trial panel commended the Bar Association and the respondent for the manner in which they had handled the proceeding and assisted the panel in acquiring the information it needed to make its decision.

## II. PROMPT DELIVERY OF FUNDS TO THIRD PERSON

¶9 Rule 1.15(b), ORPC, requires prompt delivery of funds or other property to a client or third person, who is entitled to receive the funds. In *State ex rel. Oklahoma*

*Bar Association v. Wilkins,* 1995 OK 59, ¶¶ 22–23, 898 P.2d 147, 151, the respondent in that case failed to notify a client that he had received payments from her ex-husband. On one occasion he did not pay her for five weeks and on another occasion, he took three months. Additionally, he did not promptly pay another client's medical bills as he agreed to do. The Court found these failures to be a violation of Rule 1.15(b). The Court also found that Wilkins had failed to keep his clients reasonably informed about the status of their cases, had commingled funds, and engaged in dishonest conduct. The Court suspended him for six months. In *State ex rel. Oklahoma Bar Association v. Lavelle,* 1995 OK 96, 904 P.2d 78, the respondent in that case agreed to pay the client's doctor, but delayed for about one year, and misrepresented his actions to the doctor. The Court also found that Lavelle forged another client's name on a settlement check, and misrepresented the facts to both the client and the Bar Association. The Court disbarred the respondent.

¶ 10 The record in the case before us reveals that the respondent retained, from July 1996, to April 4, 1997, $439.00 owed to the U.S. Army, with no legal excuse for that retention of funds. We find that the respondent violated Rule 1.15(b), ORPC, by this action.

### III. ENGAGING IN DISHONEST CONDUCT

¶ 11 For an attorney to engage in conduct involving dishonesty, deceit, fraud or misrepresentation is professional misconduct. Rule 8.4(c), ORPC. The respondent in the case before us admitted in the stipulations that he had entered the unauthorized signature of Captain Jeff Sexton onto the settlement check. In *State ex rel. Oklahoma Bar Association v. Wilcox,* 1997 OK 87, 942 P.2d 205, the respondent in that case had issued six checks to a clinic for medical bills which were all returned for insufficient funds. Additionally, a settlement check deposited in that respondent's account had a payee's name forged on the endorsement. As mitigation, the Court found that Wilcox had practiced law for thirteen years with no previous

discipline for professional misconduct, and had reimbursed the clinic, which was willing to continue to accept the respondent's clients. The Court found that the respondent had violated Rule 8.4, as well as Rule 1.15 of the ORPC, and Rule 1.4 of the RGDP. For these acts the Court suspended the respondent for one year.

¶ 12 In *State ex rel. Oklahoma Bar Association v. McMillian,* 1989 OK 16, ¶ 1, 770 P.2d 892, 893, this Court construed the language of the Code of Professional Responsibility, which provided: "DR 1–102. Misconduct … (A) A lawyer shall not: … (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." A comparison with Rule 8.4(c) reveals that the rule has substantially the same wording. In *McMillian,* the Court held that the rule was generally geared toward fraudulent conduct, and as such bad or evil intent or its equivalent must be shown by clear and convincing evidence to be a violation of the rule. *McMillian,* 1989 OK 16, ¶ 23, 770 P.2d at 899.

¶ 13 Although the respondent in the case before us may not have intended to defraud the U.S. Army of its money, he did intentionally endorse Captain Sexton's name on the settlement check, and by his own admission, the respondent knew this to be wrong. This action was a violation of Rule 8.4(c), ORPC. The respondent agreed during his testimony that forgery and unauthorized endorsements are acts contrary to the prescribed standards of conduct. Accordingly, the unauthorized endorsement violates Rule 1.3, RGDP.

### IV. FULL AND FAIR RESPONSE

¶ 14 The Bar Association alleges that the respondent failed to make a full and fair disclosure of all the facts pertaining to his alleged misconduct in response to the initial grievance, in violation of Rule 5.2, RGDP, and Rule 8.1(b), ORPC. The respondent answers that these allegations were not included in the Complaint, and not raised until the Bar Association filed its brief-in-chief. The respondent asserts that raising this issue for the first time on appeal is improper and violates his right to due process. He cites *State ex rel. Oklahoma Bar Association v.*

*Lobaugh,* 1988 OK 144, ¶ 15, 781 P.2d 806, 811 that due process in disciplinary proceedings contemplates a fair and open hearing with notice and an opportunity to present evidence and argument.

¶ 15 The Bar Association responds that the first time the issue was raised was at the hearing before the trial panel, as a result of a question asked by one of the members of the panel. The Bar Association offered an exhibit, to which the respondent stated he had no objection, which revealed that the respondent initially denied to the Bar Association that he had falsely endorsed Captain Sexton's name on the settlement check.[5] The Bar Association argues that the respondent waived any objections he may have had to the admission of the evidence, and the additional allegation of violation asserted in the Bar Association's brief. The Bar Association cites *State ex rel. Oklahoma Bar Association v. Eakin,* 1995 OK 106, ¶ 15, 914 P.2d 644, 650, to support the rule that a respondent's failure to object operates to waive an error, even where the Bar Association had not previously pled the issue in the complaint.

■ ¶ 16 We agree that the respondent was not given sufficient notice of the Bar Association's intention to pursue this issue, but the respondent should have objected to the introduction of the evidence, and therefore waived the error. However, the Professional Responsibility Tribunal in its report to this Court, made no finding concerning this allegation. We do not wish to encourage the late hour presentation of evidence in bar proceedings that raises a new issue which could have been pled in the initial complaint. In exercise of this Court's discretion in our *de novo* [6] consideration of the record, we exclude this issue from our consideration of discipline for the respondent.

## V. HANDWRITING EXEMPLARS

■ ¶ 17 The respondent complains that the trial panel erred in compelling him over his objection to submit handwriting exemplars, and that this violated his rights under Rule 6.11(d), RGDP, which provides that when the respondent in a disciplinary proceeding has been called as a witness, the respondent may not decline to answer any relevant question unless he personally states that his answer might disclose privileged matters, might tend to incriminate him, or might show him to be guilty of an act that would be grounds for discipline.[7] The record reveals that the respondent explicitly waived his privilege under Rule 6.11(d), RGDP, in the hearing. The assistant general counsel for the Bar Association asked the respondent if he was waiving his privileges and immunities granted by the Fifth Amendment of the Constitution of the United States, and Rule 6.11(d) of the Rules Governing Disciplinary Proceedings. The respondent answered that he was quite familiar with both and that he was waiving those privileges. He further freely admitted that he had forged Captain Sexton's signature on the settlement check. Accordingly, we find the error, if any, was waived.

## VI. DISCIPLINE

¶ 18 The record reveals that this respondent has been previously disciplined for falsely endorsing another's signature on a check, failing to notify his client upon receipt of funds, and misleading his client regarding the distribution of funds, for which this Court suspended the respondent from the practice of law for six months. *State ex rel. Okla-*

---

5. In his response to the grievance, the respondent wrote, "Mr. Serrano is misinformed in his belief that I would place any endorsement on the checks other than my own signature."

6. Having exclusive original jurisdiction over bar disciplinary proceedings, this Court's review of the record is *de novo.* Neither the trial panel's findings nor its assessments of the weight or credibility of the evidence binds this Court. *State ex rel. Oklahoma Bar Association v. Eakin,* 1995 OK 106, ¶ 9, 914 P.2d 644, 648.

7. Rule 6.11(d), RGDP, provides: "The respondent may be called as a witness either by the prosecution or on his own behalf, and when called upon to give testimony, the respondent may not decline to answer any relevant question unless he personally states that his answer thereto might disclose matters that are privileged or that would tend to incriminate him or show him to be guilty of any act or offense that would be grounds for discipline."

*homa Bar Association v. Brown,* 1989 OK 75, 773 P.2d 751. The trial panel in its report acknowledges the candor of the respondent during the final hearing in admitting the forgery, and reports that but for the candor, it would have recommended disbarment. Both the trial panel and the Bar Association recommend that the respondent be disciplined by being suspended from the practice of law for two years and one day.

¶ 19 The respondent submits that the recommendation is excessive. He acknowledges his violation of Rule 1.15, ORPC, and Rule 8.4, ORPC. He cites *Wilcox,* cited above, where the respondent in that case received a one year suspension for commingling funds and falsely endorsing a check. The respondent argues that the facts in this case are not as flagrant as the facts in *Wilcox.* The respondent further asserts mitigating evidence not included in the report of the Professional Responsibility Tribunal. Besides the fact that he acknowledged his misconduct, the respondent lists as mitigation that he has practiced law for twenty-five years, that his client was properly paid her claim, that the money belonging to the U.S. Army remained in his trust account until he paid it to the Army, that he paid the Army an additional $5,000.00 to settle the matter, that he cooperated with the General Counsel in presenting the stipulations and evidence to the trial panel, that he testified candidly acknowledging that he made "a stupid mistake," and that he did not gain financially from his actions in this matter. The respondent suggests that a suspension of one year is appropriate consistent with the discipline in *Wilcox,* and that another eight months should be added as enhancement.

¶ 20 After considering the mitigating evidence and the previous misconduct of the respondent, we agree with the recommendation of the Professional Responsibility Tribunal that the respondent should be suspended from the practice of law for two years and one day. Accordingly, the respondent is suspended from the practice of law for two years and one day from the date this opinion becomes final. The respondent is ordered to pay the costs of these proceedings in the amount of $1,489.12, within ninety days of the date this opinion becomes final.

SUMMERS, V.C.J., HODGES, LAVENDER, HARGRAVE, and ALMA WILSON, JJ., concur.

KAUGER, C.J., dissents.

OPALA, J., with whom SIMMS and WATT, JJ., join, dissenting. This repeat offender should be disbarred.

