OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GREEN

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GREEN
2020 OK 21
Case Number: SCBD-6798
Decided: 04/28/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 21, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JOHN THOMAS GREEN, Respondent.

BAR DISCIPLINARY PROCEEDINGS

Â¶0 In this disciplinary proceeding against a lawyer, the complaint alleges two counts of unprofessional conduct deemed to warrant disciplinary sanctions. A trial panel of the Professional Responsibility Tribunal found that the Respondent's actions merit the imposition of professional discipline. It recommended that Respondent be suspended from the practice of law for two years and one day and that he pay the costs of this proceeding. Upon de novo review of the evidentiary materials presented to the trial panel,

RESPONDENT IS ORDERED DISCIPLINED BY SUSPENSION OF HIS LICENSE TO PRACTICE LAW FOR A PERIOD OF NINETY DAYS AND DIRECTED TO PAY THE COSTS OF THIS PROCEEDING. COMPLIANCE WITH THIS SUSPENSION AND PAYMENT OF COSTS ASSESSED MUST BE SATISFIED BEFORE APPLICATION FOR REINSTATEMENT MAY BE CONSIDERED. 

Tracy Pierce Nester, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant

John Thomas Green, Attorney, Ponca City, Oklahoma, for Respondent, pro se

COLBERT, J.

Â¶1 This disciplinary proceeding against a lawyer poses two questions: (1) Does the record submitted for our examination provide sufficient evidence for a meaningful de novo consideration of the complaint and its disposition? and (2) Is suspension for two years plus one day together with payment of costs an appropriate disciplinary sanction for Respondent's breach of acceptable professional behavior? We answer question one in the affirmative and question two in the negative.

Â¶2 Following a grievance filed by client Jaramie Green (Client - no relation to Respondent) on May 18, 2018, the Oklahoma Bar Association (Complainant or OBA) commenced an investigation of the complaint against John Thomas Green, a licensed lawyer (Respondent). On May 25, 2018, the OBA filed a formal complaint under Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A.[1] The Complainant charged Respondent with one count for professional misconduct in violation of Rules 1.1,[2] 1.3,[3] 1.4,[4] and 8.4[5] of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2001, ch. 1, app. 3-A. Complainant charged Respondent with an additional count two for misconduct in violation of Rules 8.1(b)[6] and 8.4, ORPC, and Rule 1.3,[7] RGDP, for failing to cooperate in the disciplinary proceedings. The Complainant urges that Respondent be disciplined by disbarment. Respondent did not answer the Complaint, nor any other pleadings in this case until he eventually filed Respondent's Answer to Complainant's Brief in Chief after the Trial Panel's hearing. He delivered his Answer to the wrong location (Oklahoma Bar Association) on October 9, 2019, and it was later forwarded to this Court.

Â¶3 A trial panel of the Professional Responsibility Tribunal (PRT) conducted a PRT Hearing on June 13, 2019, without Respondent's presence. Upon conclusion of the hearing, consideration of testimony (Respondent was not present nor were any witnesses on his behalf), and admitted exhibits, the PRT issued its report (PRT Report) on July 11, 2019. Because Respondent failed to answer the Complaint and because of OBA's Motion to Deem the Allegations Admitted had been previously granted, the PRT Report found clear and convincing evidence that Respondent violated Rules 1.1 (Competence), 1.3 (Diligence), and 1.4 (Communication) of the ORPC. The Tribunal also found clear and convincing evidence that Respondent violated Rule 8.4(a) (Misconduct), ORPC, as a result of his violation of Rule 1.3, RGDP. The PRT Report recommended suspension of Respondent's license to practice law for two years and one day in the hope that it would give Respondent time to seek personal support and professional assistance, as well as help from Lawyers Helping Lawyers.

Â¶4 Following the filing of the PRT Report on July 15, 2019, Complainant filed its Application to Assess Costs in the amount of $1,881.70 on July 15, 2019, and filed its Complainant's Brief In Chief to this Court on August 6, 2019. Respondent failed to file a response to the Brief within the specified time of 15 days following Complainant's Brief in Chief. On September 25, 2019, an extension was granted on this Court's own motion, whereby the Respondent was notified that if he did not file an answer by October 9, 2019, his case would be assigned for disposition without his brief. Respondent finally filed Respondent's Answer to Complainant's Brief In Chief at the OBA on October 9, 2019, and the OBA forwarded that document to this Court on October 28, 2019.

STANDARD OF REVIEW

Â¶5 The Oklahoma Supreme Court has exclusive original jurisdiction regarding OBA proceedings. In re Integration of State Bar of Okla., 1939 OK 378, Â¶ 5, 95 P.2d 113, 114; Matter of Reinstatement of Hutson, 2019 OK 32, Â¶22, __ P.3d __. The Court's review is de novo and takes into consideration all relevant facts in determining whether discipline is merited and what measures, if any, should be imposed for the misconduct. State ex rel. Okla. Bar Ass'n v. Donnelly, 1992 OK 164, Â¶ 11, 848 P.2d 543, 546. The Court implements its constitutionally invested, nondelegable power to regulate and control the practice of law and the legal practitioners. Tweedy v. Okla. Bar Ass'n, 1981 OK 12, Â¶ 2, 624 P.2d 1049, 1052. Under a de novo examination, the Trial Panel's findings and its recommendations are not binding nor are they persuasive upon this Court. State ex rel. Okla. Bar Ass'n v. Raskin, 1982 OK 39, Â¶ 11, 642 P.2d 262, 265. This Court has a duty to be the final arbiter for adjudication and must conduct a full-scale examination of all the relevant facts. State ex rel. Okla. Bar Ass'n v. Johnston, 1993 OK 91, Â¶ 13-14, 863 P.2d 1136, 1142 ("In a de novo consideration, in which the court exercises its constitutionally invested, nondelegable power to regulate both the practice of law and the legal practitioners, a full-scale exploration of all relevant facts is mandatory. The court's task cannot be discharged unless the PRT panel submits a complete record of proceedings for a de novo examination of all material issues."(citations omitted)).

Â¶6 Before a decision to discipline an offending attorney is made, the misconduct presented must be demonstrated by clear and convincing evidence, as required by Rule 6.12(c), RGDP, 5 O.S. 2001, Ch.1, App. 1-A. To make this determination of evidence and to fully discharge the court of its duty, the trial panel must present a complete record of the proceedings. State ex rel. Okla. Bar Ass'n v. Eakin, 1995 OK 106, Â¶ 9, 914 P.2d 644, 648. The Court must determine whether the presented record is sufficient for an independent determination of the relevant facts and to craft an appropriate discipline. State ex rel. Okla. Bar Ass'n v. Perceful, 1990 OK 72, Â¶ 5, 796 P.2d 627, 630. The record in this case consists of the pleadings filed with this Court, the transcript of the PRT Hearing and exhibits admitted into the record at the PRT Hearing, the PRT Report of the trial panel filed on July 15, 2019, and the transcript of the deposition of Respondent taken on behalf of the OBA on December 20, 2018. The only so-called record or pleading submitted by Respondent is in the form of Respondent's Answer to Complainant's Brief In Chief, belatedly filed by Respondent in the wrong location (OBA Center), and eventually received by this Court on October 9, 2019. In Respondent's Answer, he set forth only a brief summary of his personal history and problems, asserting that the effect of a divorce, a necessary move, and lack of legal experience together caused him to fall into a depression although he provided no medical evidence of such a diagnosis. He disputed Complainant's arguments but offered no evidence to support those assertions, nor did he make any legal arguments or cite any legal authorities in support of his refutations in order to rebut Complainant's allegations and arguments as set out in Complainant's Brief In Chief. We are left with a record from Respondent devoid of rational legal arguments and filled only with Respondent's excuses. After examination of the complete record submitted on appeal, this Court determines that the record is sufficient for the Court's de novo consideration of Respondent's alleged misconduct.

PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Â¶7 The PRT Report provides an extensive summary of the historic facts in this case gleaned from Respondent's Deposition on December 20, 2018. PRT Report at 2-5. The more salient facts are repeated here as is necessary for this discussion. The PRT Report is replete with Respondent's many failures to respond to requests for information and his lack of cooperation with Complainant's investigator, along with Respondent's failed promises to do better in the future. However, the record shows that these promises to improve and cooperate never materialized.

Â¶8 The Client relationship began in January of 2018, when Respondent was retained by Client at a gas station in Ponca City, Oklahoma, to provide legal services relating to a post-divorce custody matter pending in Creek County, Oklahoma. Client paid Respondent $150.00 on the spot and eventually paid Respondent a total of $1,140.00, although a fee agreement was never executed or produced. Client faced an upcoming hearing pending in his case on February 6, 2018, before Judge Mark A. Ihrig. The judge had ordered mediation to occur at Client's last court hearing. The mediation was to take place prior to his February 6, 2018, hearing.

Â¶9 Prior to the mediation hearing, Client notified Respondent that he was unable to complete mediation by this deadline for financial reasons. On the morning of February 6, 2018, Respondent contacted the trial judge's office, speaking with the bailiff, to let the judge know that mediation had not yet occurred and to attempt to seek a continuance. Respondent then incorrectly assumed that a continuance had been granted. Complainant's investigator, Mr. Thames, testified in the trial panel hearing that according a conversation he had with Ms. Eastman, Respondent's opposing attorney in the case, Respondent contacted her regarding a continuance and she was not adverse to a continuance. However, she told Respondent that in that district and with that judge, he does not allow agreed continuances. Ms. Eastman told Respondent that it would have to be approved by the judge in advance and in writing. Mr. Thames also testified that he spoke with the judge's bailiff who had taken a call from Respondent. The bailiff said he told Respondent that they could not just grant it because it would have to be run by the judge. In addition the trial judge indicated a continuance could not be granted because Respondent had never filed an entry of appearance with the court for Client's case. (Deposition of Respondent at 40, December 20, 2018).

Â¶10 As a result of these exchanges, Respondent assumed he did not need to go to court for the hearing and told his client that he need not be present either. In any case, the court hearing was held as scheduled, on the afternoon of February 6, 2018, with neither Respondent not his client present. With no representation in court on Client's behalf, the judge granted a default judgment against the Client's interest. Respondent claimed that he later learned that the judge did not allow continuances without express permission.

Â¶11 Upon learning of the default judgment against himself, Client terminated Respondent as his attorney and requested a refund of the fees paid. In total, Client had paid Respondent $1,140.00. Client then hired a new attorney on March 5, 2019, to whom he paid $1,100.00, and who eventually attained a vacation of the default judgment against Client.

Â¶12 Client filed a grievance against Respondent with Complainant on May 18, 2018. After Respondent was notified of the complaint and asked to respond, Respondent had to be granted one extension past the deadline plus two additional days to finally respond by letter on July 10, 2018. On August 22, 2018, Respondent met with the General Counsel for the Complainant to discuss the grievance. At that time, Respondent agreed to participate in a diversion program if the Professional Responsibility Commission (PRC) offered it to him. On September 28, 2018, the PRC considered and voted to offer Respondent a referral under Rule 5(c), RGDP. A proposed diversion contract was mailed to Respondent on September 28, 2018, via certified mail (returned undeliverable 11-19-18). This began a series of Respondent's actions and inactions showing lack of cooperation and refusal to participate in the process or carry-out agreed upon solutions.

Â¶13 Respondent's lack of cooperation continued. After no response from the mailed diversion contract on September 22, 2018, the General Counsel attempted to contact Respondent by telephone and email with no response. A letter was then mailed to Respondent's roster address via certified mail asking for response within 5 days to which Respondent did not respond and it was returned unclaimed on December 12, 2018. On December 2, 2018, Complainant caused a subpoena duces tecum to issue for Respondent to appear and bring requested documents on December 20, 2018. This was served via certified mail to his residence and personally at his residence. Respondent did appear on December 20, 2018, but failed to bring any documents requested in the subpoena. Respondent then agreed during the deposition to participate in a diversion program if that opportunity was still available and he expressed remorse for his previous lack of communication and cooperation.

Â¶14 Following the deposition, attempts were again made to contact Respondent by email and telephone to which Respondent failed to respond. On January 11, 2019, the PRC again considered a diversion program, along with a mental health assessment, and evaluation for drug and alcohol dependency. A proposed contract was again mailed to Respondent via certified mail and personally served on him on January 18, 2019, at his residence. This included the diversion contract and appointments scheduled for his assessments at no cost to him. Again, Respondent did not keep the appointments and the letter was returned unclaimed on February 25, 2019.

Â¶15 On February 22, 2019, the Complainant's General Counsel sent a letter via U.S. mail to Respondent's roster address and to his residence, outlining options available due to his repetitive failures to cooperate. Respondent did not reply. On April 25, 2019, Complainant filed its Complaint with Supreme Court and Respondent was served via certified mail and personal service. Still he did not respond. On May 30, 2019, Complainant filed Motion to Deem Allegations Admitted with the Trial Panel pursuant to Rule 6.4, RGDP. The Motion was sustained by the Trial Panel on June 13, 2019, and there continued to be no response from Respondent.

Â¶16 When the PRT Hearing was held on June 13, 2019, Respondent did not appear and no witnesses or evidence was presented on his behalf. After sustaining the Complainant's Motion To Deem Allegations Admitted and the trial panel hearing, the Trial Panel Report (TPR) was issued on July 11, 2019, finding clear and convincing evidence that Respondent violated ORPC Rules 1.1 (Competence), 1.3 (Diligence), and1.4 (Communication). The TPR also found clear and convincing evidence that Respondent violated Rule 8.4(a) (Misconduct), ORPC, because of his violation of Rule 1.3, RGDP. (Discipline for Act Contrary to Prescribed Standards of Conduct).

Â¶17 The trial panel's recommendation for the rules violations was suspension of Respondent's license to practice law for two years and a day. The Complainant asserts the same rules violations of professional conduct as the PRT, but also charges a violation of Rule 8.1(b), ORPC (Bar Admission and Disciplinary Matters) for Respondent behavior of "knowingly fail[ing] to respond to a lawful demand for information from [a] . . . disciplinary authority." Rule 8.1(b), ORPC. Complainant thus urges this Court to impose the most serious discipline of disbarment plus assessment of costs incurred in the investigation.

DISCUSSION

Â¶18 Respondent first challenges the sufficiency and completeness of the record that was submitted by Complainant to this Court for a de novo review. The Respondent's allegation is without merit. As such, we find that the contents of the submitted record is extensive and complete and sufficient to conduct an independent on-the-record review.[8] Client's failure to have further information on the record in his behalf results from Client's refusal to participate in the process when offered opportunities, such as failing to answer the Complaint, and failing to attend or defend his position at the PRT Hearing. Client failed to participate on his own behalf in almost every way until he finally filed Respondent's Answer To Complainant's Brief In Chief on October 9, 2019. Even in the Respondent's submitted brief, he failed to make any legal arguments or cite a single legal authority in support of his positions. This Court rejects Respondent's allegation that the record does not contain complete and sufficient facts to conduct a de novo review.

Â¶19 Count I of the Complaint filed against Respondent was initiated based on a grievance filed by Respondent's Client, Jaramie Green. The grievance cited many unsuccessful attempts by Client to communicate with Respondent. Then miscommunications between Respondent and the bailiff and opposing counsel led to Respondent's mistaken belief that a continuance had been granted. Compounding that mistake, Respondent then communicated to Client that he need not appear for the hearing because Respondent had gained a continuance. This resulted in Client suffering a default judgment from the trial judge for lack of his appearance in court. Count II of the Complaint focuses on Respondent's many failures to participate in, and cooperate with, Complainant's investigation following the filing of Client's grievance.

Â¶20 The well-established reason behind the "disciplinary process, including the imposition of a sanction, is designed not to punish the delinquent lawyer, but to safeguard the interests of the public, those of the judiciary and of the legal profession." State ex rel. Okla. Bar Ass'n v. Combs, 2007 OK 65, Â¶ 36, 175 P.3d 340, 351 (citations omitted). The measure of discipline imposed upon an offending lawyer should be consistent with the discipline visited upon other practitioners for similar acts of professional misconduct. Id.

Â¶21 In Count I, as the facts show, Respondent's actions clearly show that he was in violation of professional responsibility rules, specifically those relating to Competence, Diligence and Communication during his representation of Client. ORPC Rules 1.1,1.3, and 1.4. In Respondent's Answer to Complainant's Brief In Chief, he attempted to support his efforts to refute these violations by stating, e.g., he "was prepared to file an entry of appearance", and to explain why he had not done so, said "I was told a continuance would be granted." When trying to defend the fact that he had not gained a continuance for the hearing resulting in a default judgment, "I was prepared to file a motion to vacate in a timely manner" when he learned his client had already hired another lawyer. Respondent was lacking in competence and diligence, unprepared to professionally act for his client, thus violating the charged rules of professional conduct.

Â¶22 Count II additionally charges that Respondent violated Rule 8.1(b), ORPC, by his knowing failure to respond to Complainant's continued lawful demands for information; asserting that this violation is "quite serious," especially after the numerous opportunities that Respondent was given to cooperate. The second count is founded on Respondent's actions, or lack thereof, in response to Client's grievance and the ensuing investigation opened by Complainant relating to the grievance.

Â¶23 Complainant argues for Respondent's disbarment for violations of the professional responsibility rules, citing case authority violations and discipline in previous cases. See, e.g., State ex rel. Oklahoma Bar Ass'n v. Parker, 2015 OK 65, 359 P.3d 184; State ex rel. Oklahoma Bar Ass'n v. Smith, 2016 OK 19, 368 P.3d 810; State ex rel. Oklahoma Bar Ass'n v. Godlove, 2013 OK 38, 318 P.3d 1086. We find each of the cited cases are distinguishable from the instant case.

Â¶24 Parker, though similar to the instant case, involved respondents who "completely failed to respond to address to their clients' needs and to the inquiries from the Bar during the investigation." Parker, 2015 OK 65, Â¶20, 359 P.3d 184, 188. There we held that the appropriate discipline was disbarment (citing State ex rel. Oklahoma Bar Ass'n v. Passmore, 2011 OK 90, 264 P.3d 1238; State ex rel. Oklahoma Bar Ass'n v. McCoy, 1996 OK 27, 912 P.2d 856). Whereas here, Respondent failed to respond to most, but not all, requests as required by the rules. However, he did send a letter to Complainant in response to the Client's initial grievance (albeit delayed), he did appear for a meeting with the general counsel after the grievance was filed, he did show up for a deposition after he was subpoenaed, and he did eventually file a belated Answer to the Complainant's Brief in Chief. However, Respondent did not answer or respond to any entreaties from the investigative efforts of Complainant between August 22, 2018, when he met with General Counsel until his subpoenaed deposition on December 20, 2018. Following the deposition in December of 2018, there was again no participation or cooperation by Respondent until his final act of submitting Respondent's Answer To Complainant's Brief in Chief on October 9, 2019. Though his responses were inadequate, it does not merit disbarment.

Â¶25 In Godlove, even after multiple sanctions from the court, respondent continued filing frivolous claims and most of the monetary sanctions went unpaid. This too is distinguishable from the case at bar. Godlove, 2013 OK 38, 318 P.3d 1086. The respondent in Godlove violated many of the same rules of professional responsibility as here, but with additional violations of Rules 3.1 and 3.2, ORPC, regarding frivolous lawsuits and failure to expedite the lawsuit, as well as a violation of Rule 8.4(d), ORPC. Rule 8.4(d) which addresses engaging in conduct prejudicial to the administration of justice. In Godlove, the discipline of disbarment was appropriately ordered for respondent.

Â¶26 In Smith, this Court held that the discipline of disbarment for respondent was merited for multiple violations of the rules of professional conduct involving multiple clients. Smith, 2016 OK 19, 368 P.3d 810. Again, many of the violations were similar to the rules violated by Respondent here, but also included violations of Rule 1.5, ORPC (collecting an unreasonable fee) and Rule 5.2, RGDP, because of multiple instances of failure to respond to the grievance investigation. The respondent in Smith involved the filing of seven separate grievances by different clients, to which respondent completely failed to respond to all. Smith is distinguishable from the case at bar by the fact that Respondent here is found to have violated rules involving only two counts and a single client.

Â¶27 As the PRT did in its trial panel report, we find this case more akin to State ex rel. OBA v. Giger, (Giger II) 2003 OK 51, 72 P.3d 27. The respondent in Giger II involved facts similar facts to those of Respondent here. In Giger II, respondent claimed that his misconduct resulted from mental and psychological disability but provided no evidence to support this claim. Id. Â¶ 40, 72 P.2d at 39. Here Respondent blames his failures on depression with no substantiating evidence and a host of negative personal problems. In both instances, respondents provided no medical evidence of their claims and showed no causal connection. In both cases, the overall damage to the clients were minimal. Giger II explains it this way:

Emotional or psychological disability may serve to reduce a legal practitioner's ethical culpability, but does not immunize that person from imposition of disciplinary measures that are necessary to protect the public. When a mental disorder is tendered as a mitigation factor for the assessment of a lawyer's culpability, there must be a causal relationship between the medical condition and the professional misconduct. Not only did respondent fail to provide medical substantiation that he suffers from depression, but he also failed to establish a causal link between this perceived mental condition and the misconduct for which additional discipline is sought. The court can and must protect the public from a lawyer who suffers from undefined psychological problems that call into serious question his continued fitness to practice law.

Id. Â¶ 39, 72 P.3d at 39 (citations omitted).

The court in Giger II concluded that, although adequate evidence was found to support disbarment, it declined to impose that significant discipline because harm suffered by the client or public were missing or insignificant. Id. As in Giger II, we decline to impose the more serious discipline of disbarment.

MITIGATING FACTORS

Â¶28 When assessing the discipline to be enforced in an attorney's violation of rules of professional conduct, this Court considers mitigating circumstances in assessing the type and amount of discipline to be assessed. State ex rel. OBA v. Combs, 2007 OK 65, Â¶35, 175 P.3d 340, 351; see also, State ex rel. OBA v. Giger, (Giger I) 2001 OK 96, Â¶8, 37 P.3d 856, 863-64. Positive factors considered in other cases, e.g., a long history of legal practice without previous discipline, acknowledging misconduct and apologizing for such, and accepting full responsibility for the misconduct are absent here. See Combs Â¶ 35, 175 P.3d at 351. Respondent's sole pleading in this case is filled with unfounded excuses to justify his poor representation and behaviors, with no attempt to acknowledge his shortcomings. In State ex rel. OBA v. Brown, 1998 OK 123, Â¶19-20, 990 P.2d 840, 845, though respondent presented several mitigating factors, such as acknowledgment of misconduct, cooperation with general counsel in the investigation, and testifying candidly of his mistakes, he was suspended for two years and a day. A previous disciplinary action was also a factor. Respondent here shows a lack of willingness to accept responsibility and remorse for his misconduct.

Â¶29 Mitigating factors in Respondent's favor here are few in comparison to many other comparable disciplinary actions. However, some of those factors include that Respondent is relatively new and inexperienced to the legal profession since he had only been in practice since 2016. PRT Report at 7. He has no prior grievances or disciplinary actions of record, and he displayed no attempt to purposefully deceive the client in his representation. Also, the client did not suffer appreciable harm although client was forced to attain new counsel at additional cost.

Â¶30 Complainant recommends disbarment plus assessment of costs incurred in the case. The Trial Panel Report recommends suspension for two years and one day. Though disbarment may be warranted considering Respondent's lack of cooperation and his failure to accept responsibility and acknowledge his misconduct, we are led to dispense a lesser discipline as in Giger II. 2003 OK 51, Â¶40, 72 P.3d 27, 39-40. There are many comparison's with this case and Giger II. One being, that Respondent here, as there, blamed his failings on depression, without evidence to support a definitive diagnosis of depression or a causal link from this to his misconduct. We anticipate that, given time to reconcile his personal problems and to seek help for his legal inexperience and lack of practice by working with organizations like Lawyers Helping Lawyers, Respondent will be positioned to gain the help he needs to become a productive member of the bar.

CONCLUSION

Â¶31 After a thorough review of the record, the Court concludes that clear and convincing evidence shows that Respondent violated ORPC Rules 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication) and 8.4(a) (Misconduct) by his violation of RGDP Rule 1.3 (disciplinary proceedings). We also note that Respondent's failures to respond to lawful requests of information from Complainant's investigator supports the finding of a clear and convincing violation of ORPC Rule 8.1(B) (disciplinary proceedings). These serious violations of the rules of professional conduct require imposition of serious disciplinary action. Upon consideration of these violations, and giving due consideration to the mitigating factors tendered, the severe actions recommended by Complainant and the Trial Panel are not warranted. Therefore, we conclude that Respondent must be disciplined by a suspension of his license for ninety days and be assessed costs incurred in this proceeding.

RESPONDENT IS ORDERED DISCIPLINED (1) BY SUSPENSION OF HIS LICENSE TO PRACTICE LAW FOR A PERIOD OF NINETY DAYS AND (2) BY IMPOSITION OF COSTS OF THIS PROCEEDING IN THE AMOUNT OF $1,881.70. COMPLIANCE WITH THIS SUSPENSION AND PAYMENT OF COSTS ASSESSED MUST BE SATISFIED BEFORE APPLICATION FOR REINSTATEMENT MAY BE CONSIDERED.

VOTE:

ALL JUSTICES CONCUR

FOOTNOTES

[1] The Rules Governing Disciplinary Proceedings are found at 5 O.S. 2001, Ch. 1, App. 1-A. The provisions of the RGDP Rule 6.1 state:

The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and filed with the Chief Justice of the Supreme Court.

[2] ORPC Rule 1.1 -- Competency

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

[3] ORPC Rule 1.3 -- Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

[4] ORPC Rule 1.4 -- Communication

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] ORPC Rule 8.4 -- Misconduct

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[6] ORPC Rule 8.1(b) - Bar Admission and Disciplinary Matters

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
. . .
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[7] RGDP Rule 1.3 - Discipline for Act Contrary to Prescribe Standards of Conduct.

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

[8] The record consists of the pleadings filed with the Supreme Court, the report of the Professional Responsibility Tribunal filed July 15, 2019, the transcript of the Hearing before the Professional Responsibility Tribunal held on June 13, 2019 with OBA Hearing Exhibits 1-24 provided June 13, 2019, Complainant's Application To Assess Costs in the amount of $1,881.70 filed July 17, 2019, and Deposition of John Thomas Green taken on behalf of the OBA on December 20, 2018.