2013 OK 38

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Joan GODLOVE, Respondent.**

**SCBD No. 5939.**

Supreme Court of Oklahoma.

June 11, 2013.

Gina Hendryx and Tina Izadi, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

TAYLOR, J.

¶1 The Oklahoma Bar Association (OBA) initiated this proceeding under Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2011, ch. 1, app. 1–A, against Joan Godlove (Godlove) by filing a one-count complaint on October 22, 2012.[1] The Professional Responsibility Tribunal (PRT) deemed the allegations admitted but did not specify which rules of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001 & Supp. 2008, ch. 1, app. 3–A, that it found Godlove had violated.[2] The PRT recommended a suspension of two years and a day. The OBA asks this Court to impose a minimum suspension of two years and a day and to impose costs.

## I. STANDARD OF REVIEW

¶2 Our review in bar disciplinary proceedings is *de novo*. *State ex rel. Okla. Bar Ass'n v. Taylor*, 2003 OK 56, ¶2, 71 P.3d 18, 21. "The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with us in the exercise of our exclusive original jurisdiction in bar disciplinary matters." *State ex rel. Okla. Bar Ass'n v. Todd*, 1992 OK 81, ¶2, 833 P.2d 260, 262. This Court's duty can only be discharged if the record is sufficient to allow an independent determination of the facts and the crafting of an appropriate discipline. *State ex rel. Okla. Bar Ass'n v. Giger*, 2001 OK 96, ¶6, 37 P.3d 856, 860–861. An attorney's failure to respond to requests for information or the complaint or failure to appear at the hearing does not prevent this Court from crafting an

---

1. The investigator testified that he did not have any evidence that this disciplinary proceeding should have been brought under Rule 10 of the RGDP for personal incapacity to practice law.

2. Rule 6.4 of the RGDP provides that, if the respondent fails to file an answer to the complaint, "the charges shall be deemed admitted...."

The alleged misconduct falls under the 2011 Oklahoma Statutes, as well as the 2001 Oklahoma Statutes and the 2008 amendments thereto. However, the relevant provisions were unchanged in the 2011 Oklahoma Statutes.

appropriate discipline. Having carefully perused the record, we conclude it is adequate for *de novo* consideration of the alleged misconduct.

## II. BURDEN OF PROOF

¶ 3 In bar disciplinary proceedings, the OBA, as the complainant, has the burden of establishing by clear and convincing evidence that a lawyer has violated the rules governing lawyers' conduct. *State ex rel. Okla. Bar Ass'n v. Tweedy*, 2000 OK 37, ¶ 7, 52 P.3d 1003, 1006, *cert. denied*, 531 U.S. 1145, 121 S.Ct. 1082, 148 L.Ed.2d 958 (2001). Clear and convincing evidence is sufficient evidence, both in quality and quantity, so as to produce a firm conviction of the truth of the allegations. *See State ex rel. Okla. Bar Ass'n v. Wilcox*, 2009 OK 81, ¶ 2, 227 P.3d 642, 647.

## III. GODLOVE'S FAILURE TO ANSWER OR APPEAR

¶ 4 The OBA received a grievance against Godlove from an opposing counsel on September 22, 2011, complaining of Godlove's frivolous litigation tactics. On October 6, 2011, the OBA sent Godlove a letter, enclosing a copy of the grievance and informing her that Rule 5.2 of the RGDP required her to respond within twenty days. The letter and enclosures were mailed to 3179 S. Madison Ave., Tulsa, OK 74105, her official OBA address. The OBA did not receive a response from Godlove. On October 27, 2011, the OBA received a letter supporting the grievance from an opposing litigant. On November 18, 2011, the OBA received a letter from another opposing counsel complaining of Godlove using different inactive addresses on her pleadings.

¶ 5 On September 28, 2012, the OBA sent Godlove a letter, along with a copy of the complaint, by certified mail, return receipt requested, restricted delivery to her official OBA address. A copy of the United States Postal Service tracking page shows that notice of the letter was left on October 1, 2012,

and that the letter was returned to the OBA on October 27. On October 12, 2012, the OBA procured a private process server to obtain personal service on Godlove. The process server's Affidavit of Service stated that she had personally delivered the OBA letter, the complaint, the OBA's entry of appearance, the appointment of the trial panel, and notice of hearing to "Joan Godlove, Attorney at Law, 1611 S. Utica Ave., Tulsa, OK 74104 on October 16, 2012 at 5:53 pm." Thereafter, the OBA's investigator attempted to contact Godlove two or three times but did not reach her. He then contacted her brother, a Lawton attorney, who explained that he spoke with Godlove once or twice a month and that he had no concerns about Godlove's health. Except for one message left on the investigator's voice mail saying that she would call back later in the week, Godlove has had no communication, written or otherwise, with the OBA. Godlove did not file an answer to the complaint, did not appear at the hearing, and has not filed any documents in this proceeding.

## IV. BACKGROUND FACTS

¶ 6 Lorice T. Wallace, who died on May 31, 2003, and her husband, Franklin Wallace, who died on July 19, 1990, had four children: Patricia Hastings, Roma Jage, Stephen P. Wallace, and a daughter L.W., who is in her fifties, has Down's Syndrome, has the beginning stages of dementia, and has a court appointed guardian.

¶ 7 The underlying litigation primarily involves two trusts established by Lorice Wallace (together trusts): the Lorice T. Wallace Revocable Trust dated December 26, 1974, as restated effective October 5, 1993, and as amended on February 12, 1998; and the Lorice T. Wallace Irrevocable Trust dated February 8, 1996.[3] These trusts had a corpus of an approximate value of thirty million dollars. Lorice Wallace was the trustee, and Trust Company of Oklahoma (Trust Company) and Ronald Saffa (Saffa), an attorney and nephew of Lorice Wallace, were named as

---

**3.** There is a third trust, the Lorice T. Wallace Irrevocable Trust dated September 11, 1992, also known as the Lorice T. Wallace Life Insurance Trust. This trust owned a one million dollar life insurance policy on Lorice Wallace's life. The Trust Company was the trustee of this trust.

substitute co-trustees of the revocable trust.[4] The Wallace's children were the beneficiaries of the trust.

¶ 8 In 1999, Patricia Hastings filed for a guardianship of Lorice Wallace. Shortly before the guardianship was filed, Lorice resigned as trustee and Trust Company and Saffa took on the trustee responsibilities. At a hearing on March 13, 2000, the judge commented that he had not yet determined Lorice Wallace's capacity or incapacity, so she still had legal authority to make her own decisions. That same day, Lorice Wallace, at the suggestion of Stephen Wallace and his attorney, executed amendments to her revocable trust that removed Trust Company and Saffa as trustees and named Stephen Wallace, Mary Roma, and Bank One as successor co-trustees. Lorice Wallace also executed a power of attorney in favor of Stephen Wallace.[5] On March 25, 2002, the court determined the original instruments and the some of the first amendments controlled the revocable trust, making the last amendment invalid and confirming Trust Company and Saffa as the successor co-trustees of the revocable trust. No successful appeal was filed from this order, and the order became final.

This order is the basis of most of Godlove's alleged improper pleadings and misconduct.[6]

## V. TULSA DISTRICT COURT CASES, APPEALS, ORIGINAL JURISDICTION APPLICATIONS

¶ 9 Tulsa District Court case number PT–2002–56, filed on September 11, 2002, by Saffa seeking instruction regarding the trusts' administration, was the first of the trust-related cases filed.[7] A second petition in Tulsa County District Court was filed in PT–2003–46, and many of the hearings were held and pleadings were filed in both cases. Additionally the following cases were filed involving the trusts and in which Godlove's conduct is challenged as unprofessional by the OBA: *Hutchinson v. Hahn*, 402 Fed. Appx. 391, 2010 WL 4780694 (10th Cir.2010); *Jage v. Trust Co. of Okla.*, No. 06CV–249 (N. Dist.Okla. May 9, 2006) (opinion at 2009 WL 3241659); *Wallace v. Trust Co. of Okla.*, No. 102,346 (Okla. July 21, 2005); *Lorice T. Wallace Trust v. Saffa*, No. 102,521 (Okla. Sept. 7, 2005); *Wallace ex rel. L.F.W. v. Hon. Frizzell*, No. 102,813 (Okla. Nov. 28, 2005); *Trust Co. of Okla. v. Jage*, No. 104,036 (Okla. Nov. 28, 2006); *JP Morgan Chase Bank, N.A. v. Jage*, No. 106,217 (Okla. Aug. 22,

4. The litigation involving these two trusts is so intertwined that the references in the record do not clearly differentiate which of the two trusts is being referenced in the testimony and exhibits. Every attempt has been to accurately reference the trusts in this opinion. However, any error in this regard does not affect this bar proceedings and our findings regarding Godlove's misconduct.

5. There are also exhibits containing allegations that the successor trustees for Lorice T. Wallace Irrevocable Trust were improperly changed.

6. Exhibit 11 is a letter from Patricia Wallace Hastings, a sibling of Stephen Wallace and Roma Jage and the guardian of L.W., in which she states that L.W.'s trust has incurred legal expenses of $1,147,735.00 in regard to frivolous litigation. However, the record shows that much of the frivolous litigation was brought by Stephen Wallace without any involvement by Godlove. Although the investigator testified that the letter attributed the entire sum to Godlove's action, this is an incorrect statement as neither the letter nor the record shows how much of the $1,147,735.00 was attributable to Godlove's actions. In fact, the Trust Company's counsel testified that he did not know how much was at-

tributable to Godlove's conduct. Saffa's counsel attributed half of the costs to repetitious litigation, but he did not state how much was attributable to Stephen Wallace's action and how much was attributable to Godlove's actions.

7. Three years after PT–2002–56 was filed, Godlove entered appearances as counsel for Stephen Wallace and Roma Jage on September 12, 2005, and December 20, 2005, respectively. On March 15, 2006, Godlove filed a motion to withdraw as Stephen Wallace's attorney stating that he had filed papers in appeals without her knowledge. The court granted her motion on March 16, 2006. On May 11, 2009, Godlove again entered her appearance for Stephen Wallace. The OBA has included many exhibits, including ones filed by Stephen Wallace acting *pro se*, which this Court is hard pressed to understand their relevance in the absence of an explanation from the OBA. Likewise, the OBA has submitted motions of opposing counsel and purported court documents which have not been stamped as filed by a court clerk. This Court will not consider these documents in assessing Godlove's discipline. Some exhibits were submitted more than once. Furthermore, the OBA has consumed numerous hours of judicial resources combing through apparently irrelevant exhibits.

2008); *Franklin A. Wallace Revocable Trust v. Wallace*, No. 106,738 (Okla. Jan. 21, 2009); *Wallace v. Hon. Cantrell*, No. 107,300 July 8, 2009; *Jage ex rel. L.F.W. v. Tulsa County District Court*, No 109,643 (Okla. July 6, 2011); *Jage v. Hon. Morrissey*, No. 110,210 (Okla. Dec. 16, 2011); *Jage v. JP Morgan Chase Bank, N.A.*, No. PT–2009–37 (Tulsa County Dist. Court, July 16, 2009) (consolidated with PT–2003–46); *Jage v. JP Morgan Chase Bank, N.A.*, No. PT–2009–38 (Tulsa County Dist. Court, July 17, 2009) (consolidated with PT 2003–46); *Yorktown Holding, LLC v. Wallace*, No. CJ–2009–247 (Tulsa County Dist. Court, Jan. 13, 2009); *Jage v. JP Morgan Chase Bank, N.A.*, No. PT–2009–5476 (Tulsa County Dist. Court, July 24, 2009); *Jage v. JP Morgan Chase Bank, N.A.*, No. PT–2010–7077 (Tulsa County Dist. Court, Nov. 4, 2010); *Jage v. Trust Co. of Okla.* No. PT–2011–2181 (Tulsa County Dist. Court, April 15, 2011).[8]

¶ 10 Even though the issue of the proper trustees of the Lorice T. Wallace revocable trust was resolved by a final order issued on March 25, 2002, in the guardianship proceeding, Godlove filed at least six cases and at least twenty-four pleadings collaterally attacking the order. In the pleadings, Godlove contended the Trust Company and/or Saffa were not the trustees and lacked standing to seek instructions regarding the trust's administration. Further she argued that the trust required Trust Company and Saffa to act jointly, and, because Saffa acted alone in filing at least one of the petitions, the court was without jurisdiction.

¶ 11 In *In re Wallace Revocable Trust*, 2009 OK 34, ¶ 11, 219 P.3d 536, 539, this Court recognized the finality of the March 25, 2002 order naming the Trustee Company and Saffa as trustees. Even so, Godlove filed at least five more documents making the argument that Trust Company and Saffa lacked standing because they were not the trustees, framing this argument as "jurisdictional fraud." Additionally thereafter, Godlove made the jurisdictional fraud argument at least three times when objecting to the

cancellation of notice of *lis pendens* filed by Stephen Wallace, Roma Jage, or Godlove on behalf of one of her clients.

¶ 12 Godlove brought at least three cases against the Trust Company, the Trust Company's officers, Saffa, and opposing counsel in the trust cases seeking damages for fraud based on her "jurisdictional fraud" theory. One such case was brought in the United States District Court for the Northern District of Oklahoma. *Jage v. Trust Co. of Okla.*, No. 06–CV–249, 2009 WL 3241659 (N.D.Okla. Sept. 30, 2009), in which Godlove filed counts for breach of fiduciary duty, fraud and collusion, negligent supervision, and attorney deceit and collusion. The court dismissed the action upon the defendant's motion and allowed the defendants to recover costs from Godlove's clients. Godlove filed *Jage v. JP Morgan Chase Bank, N.A.*, No. CJ–2001–2181 (Tulsa County Dist. Court, Nov. 9, 2012), and *Jage v. Trust Co.*, No. CJ–2009–5476 (Tulsa County Dist. Court, July 24, 2009) (dismissed for failure to timely serve summons), in which she alleged the defendants had committed fraud by assuming the role of trustees.

¶ 13 On at least seventeen occasions, Godlove sought the recusal of the assigned judge after an adverse ruling. Each time, she would send a letter to the judge asking for an *in camera* hearing on her motion to recuse. When the judge denied her motion, Godlove did not follow the procedures set out in Rule 15 of the Rules for the District Courts, 12 O.S.2011, ch. 2, app., which provides for a recusal motion to be presented to the Chief Judge of the district or to the Presiding Judge of the administrative district if the Chief Judge's disqualification is sought. Instead, Godlove unremittingly argued that the assigned judge had no jurisdiction to continue the proceedings while the disqualification motion was pending.

¶ 14 Godlove pursued this line of argument, even filing an application for this Court to assume jurisdiction. In this proceeding, Godlove filed a motion for leave to file an

---

8. The OBA also filed exhibits from *Wallace v. Trust Co. of Okla.*, No. CJ–2002–4727 (Tulsa County Dist. Court, Aug. 16, 2002). This Court cannot determine the relevance of these exhibits as none of the documents show Godlove was even remotely involved in this litigation.

affidavit regarding standing.[9] In the proceeding, Godlove objected to the Court using its staff in the proceeding and sought access to this Court's internal communications. Her motion was denied based on judicial privilege. Even so, Godlove undertook this same position in a subsequent original proceeding before this Court.[10]

¶ 15 On October 25, 2006, in separate orders, the district court found that Stephen Wallace and Roma Jage had violated the no-contest provisions of the Lorice T. Wallace Revocable Trust and the Lorice T. Wallace Irrevocable Trust. As a result, the district court ordered their beneficial interest in the trusts forfeited. Godlove filed an appeal on behalf of Roma Jage. This Court affirmed the district court's ruling, stating:

We agree with that determination of the trial court. The record reveals that the litigation over these trusts includes numerous lawsuits, which have continued for years. Although Ms. Jage claims that the unappealed March 25, 2002, judgment was obtained by fraudulent representations to the trial court, the trial court was not persuaded by these arguments. Instead of raising this before the district court in Tulsa County, Ms. Jage chose to file a federal lawsuit contesting the findings made in the March 25, 2002, judgment..... The transcript reveals that the issues in this case have been litigated and constant attempts made to re-litigate the same issues....

*In re Wallace Revocable Trust*, 2009 OK 34, ¶ 11, 219 P.3d 536, 539 (citations and footnotes omitted). When Roma Jage was asked during a hearing if she would like to withdraw her allegations of jurisdictional fraud because she was in danger of forfeiting her beneficial interest, she responded that she did not want to withdraw the allegations. However, the attorney for the Trust Company testified that he believed Jage's forfeiture of her beneficial interest was a result of Godlove's actions.

¶ 16 During the course of the proceedings, Godlove changed her address a number of times. One opposing counsel sent a letter to the OBA complaining that six mailings sent to the post office box address listed in Godlove's pleadings were returned on November 14, 2011, with the notation that the post office box had been closed on November 9, 2011, and the mailings could not be forwarded. Godlove changed her official OBA address on June 9, 2011, to the Madison Ave. address. The letter's author noted that on July 8, 2011, in Supreme Court filings, Godlove listed her address as 2121 S. Columbia, Suite 500, Tulsa, but as recently as November 10, 2011, she listed her address as P.O. Box 4400 in pleadings filed in a Tulsa County district court case. The author stated that according to the occupant of building at the S. Columbia address, it had not been Godlove's address for several months. Godlove continuously failed to use her correct address in her court filings. She did not always file a timely notice of change of address. Thus, many of the court documents were returned as undeliverable.

¶ 17 There are several other of Godlove's actions that the OBA contends were improper and submitted evidence regarding, either through testimony or exhibits. Godlove filed *lis pendens* notices on behalf of Stephen Wallace or Roma Jage during a time when her client was specifically enjoined from filing such notices and after the property's sale had been confirmed by the court. When the trusts moved for cancellation of the notices, Godlove would then defend the *lis pendens* notices, arguing lack of jurisdiction. Godlove's actions obstructed the trustees' attempts to sell the properties. There is testimony that Godlove would file motions, fail to appear at the hearing, and then ask that the orders against her or her client be vacated. Godlove abused discovery by proceeding as if there had been no final determination of the trustees. Godlove filed documents and, then, re-filed virtually the same documents a few days later. The OBA presented evidence that Godlove was sanctioned for her actions in the district court, and she has not paid the amount of the sanctions.

9. *Jage v. District Court of Tulsa County*, No. 109,-643 (Okla. Sept. 8, 2011).

10. *Jage v. Honorable Morrissey*, No. 110,210 (Okla. Jan. 31, 2012).

## VI. VIOLATIONS

¶ 18 The OBA alleges that Godlove's actions violate the Rules 1.1,[11] 1.3,[12] 3.1,[13] 3.2,[14] 3.3,[15] 3.4,[16] 8.1,[17] and 8.4(a) and (d)[18] of the ORPC and Rule 5.2[19] of the RGDP. We agree that Godlove has violated these ORPC and RGDP rules.[20] The OBA has proven by clear-and-convincing evidence that Godlove's

11. ORPC Rule 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

12. ORPC Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

13. ORPC Rule 3.1 provides: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established."

14. ORPC Rule 3.2 provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

15. ORPC Rule 3.3 provides:
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
. . .
(4) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client.
. . .

16. ORPC Rule 3.4 provides:
A lawyer shall not:
. . .
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;
(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused;
. . . .

17. ORPC Rule 8.1 provides:

A lawyer ... in connection with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

18. ORPC Rule 8.4 provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
. . .
(d) engage in conduct that is prejudicial to the administration of justice;
. . . .

19. RGDP Rule 5.2 provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

20. We do not agree with the OBA that the forfeiture of Roma Jage's beneficial share in the trusts clearly and convincingly proved Godlove failed to competently represent her clients. The evidence is that when asked if she would like to withdraw her allegations at the risk of losing her share in the trusts, Godlove's client Roma Jage emphatically declined to do so.

conduct violated the ORPC and RGDP. Godlove repeatedly failed to provide competent representation, failed to act with reasonable diligence, failed to act in good faith, asserted issues and claims which were frivolous, failed to make reasonable efforts to expedite litigation, was less than candid with the court when she continuously filed repeated actions regarding the same issue which had already been determined by a final order, not keeping her address current with the court and opposing counsel, and by failing to appear and prosecute motions that she had filed. Godlove knowingly disobeyed an order of the court by filing notices of *lis pendens* on behalf of a client who had been enjoined from such filings. Godlove also made numerous irrelevant and frivolous discovery requests. Godlove has completely ignored her obligations to respond to inquiries in this bar disciplinary proceeding. Godlove's conduct is prejudicial to the administration of justice and has caused both her client's and the trusts unnecessary expenditure of funds.

¶ 19 The United States District Court for the Northern District of Oklahoma, in imposing sanctions against Godlove, recited Godlove's conduct in *Hutchinson v. Hahn*, No. 05–CV–453, which involved the ownership of a piece of art. This description could apply equally to Godlove's conduct here.

> This first case was dismissed after the court determined that plaintiffs' claims were barred by laches. Plaintiffs, through their attorney Joan Godlove ..., have since filed more than thirty (30) lawsuits in various courts, including this one, all of which derive from the same facts at issue in the original case.
>
> ...
>
> In sum and substance, the claims made in the instant case are the same claims that have been made by Plaintiffs for the past twenty-five (25) years. Each time Godlove and her clients lost a legal battle, they simply filed a new lawsuit naming, as additional defendants, those opposing parties, lawyers, and law firms that prevailed against them. Neither Godlove nor her clients have ever been successful in any of the numerous lawsuits and appeals which they have filed, and Godlove's tactics have

previously been sanctioned by various courts.

...

> Moreover, the Court observes that this is not the first time that Plaintiff Hutchinson, by and through attorney Godlove, has requested that a judge recuse himself after receiving an adverse ruling. Such behavior suggests a pattern of prohibited "judge shopping"....

...

> In spite of these previous rulings, Godlove filed yet another lawsuit, continuing to claim that the lawyers who had opposed Plaintiffs had committed fraud on the court and engaged in a RICO conspiracy. Indeed, it appears that attempting to assert "new claims" based on previous, rejected claims has become part and parcel of Godlove's practice. Godlove cannot breathe new life into non-viable claims by merely adding new defendants, and the Court cannot sit by and let this pattern continue....

*Hutchinson v. Hahn*, No. 05–CV–453, 2007 WL 2572224, at *1, 3, 7 (N.D.Okla. Sept. 4, 2007).

## VII. ENHANCEMENT

¶ 20 Rule 6.2 of the RGDP allows for evidence from a prior investigation to be relied upon to enhance discipline. In this case, the OBA relies on an order and judgment issued in *Hutchinson v. Hahn*, No. 09–5144, 2010 WL 4780694 (10th Cir. Nov. 24, 2010). We reject the OBA's use of this opinion for enhancement. The OBA states that in February of 2010, it conducted an investigation concerning Godlove's misconduct in DC 10–48 without giving any hint as to what DC 10–48 refers. By the date on the Tenth Circuit's order, it also appears that the order and judgment relied on was issued after the investigation in the previous matter was concluded.

¶ 21 Rule 6.2 requires that evidence to be used as enhancement must have been relied on in the prior investigation. The order in *Hutchinson* could just as easily been put in the file after the investigation was concluded. The OBA has failed to show that it was relied

on the opinion. Rather, the OBA merely states that it was found in the file. Therefore, this Court will not rely on the *Hutchinson* order for enhancement.

## VIII. APPROPRIATE DISCIPLINE

 ¶ 22 One purpose of attorney discipline is to preserve confidence in the bar rather than to punish attorney misconduct. *State ex rel. Okla. Bar Ass'n v. Pacenza,* 2006 OK 23, ¶ 18, 136 P.3d 616, 625. A second purpose is to deter the attorney and other attorneys from similar future conduct. *Id.* A third purpose is to protect the public. *State ex rel. Okla. Bar Ass'n v. Tweedy,* 2000 OK 37, ¶ 44, 52 P.3d 1003, 1012, *cert. denied,* 531 U.S. 1145, 121 S.Ct. 1082, 148 L.Ed.2d 958 (2001). Although this Court strives to administer discipline in a uniform manner, each proceeding is unique, and, thus, discipline must be determined on a case-by case basis. *Id.*

¶ 23 In *State ex rel. Okla. Bar Ass'n v. Tweedy,* 2000 OK 37, 52 P.3d 1003, the misconduct occurred between 1986 and 1993 and, although not as extensive, is similar to the misconduct here. After a court entered a final judgment against the attorney's client in federal district court, the attorney filed two more cases regarding the same claim. The federal district court sanctioned the attorney and enjoined him from relitigating issues decided in the first case. During the litigation, the attorney filed numerous post-trial motions to vacate, to reconsider, and to clarify. The attorney brought two appeals and two writs of mandamus in the Tenth Circuit Court of Appeals. The Tenth Circuit sanctioned the attorney noting the plaintiff's numerous multiple and vexatious filings warranted the sanctions. The attorney believed that the federal district court and circuit court had been defrauded, and, thus, he was justified in the multiple filings to bring attention of the fraud to the courts. Although never wavering from this belief, the attorney cooperated fully with the investigation. Between the time that the compliant was filed in the office of the Clerk of the Supreme Court on December 22, 1992, and the time the PRT hearing was held in 1999, there was no allegation or evidence that the attorney had continued the misconduct in the intervening seven years.

¶ 24 Even though the attorney in *Tweedy* had previously received a private reprimand, this Court determined that a ninety-day suspension was the appropriate discipline. In determining the appropriate discipline, this Court relied heavily on the fact that the sanctions meted out by the federal courts had worked to stop the offending conduct. Thus, the sanctions had served the purpose of discipline: protecting the courts, protecting the public, and protecting confidence in the legal system.

¶ 25 The same cannot be said for Godlove. Even after receiving at least three monetary sanctions by Oklahoma state courts totaling more than $80,000, Godlove continued her frivolous filings. As yet, Godlove has not paid most of the sanction awards. Further, even after sanctions and this Court's opinion recognizing the March 25, 2002 order's finality and affirming the forfeiture of her client's beneficial interest, Godlove did not cease her frivolous filings. By failing to respond to the OBA's investigatory requests and failing to comply with this Court's rules and order, Godlove has shown a total lack of respect for this Court and the process and rules that protect the public from errant lawyers. By failing to use a current correct address and using more than one address, Godlove has shown a lack of respect for the judicial system, for her clients, and for fellow lawyers. She has evaded notice of orders and pleadings filed in her clients' cases and, temporarily, evaded notice of this proceeding.

 ¶ 26 We have not before been presented in an attorney disciplinary proceeding with facts in which a lawyer abused the judicial system to the extent that Godlove has done here. For the extensive violations of the rules governing lawyers' conduct and for ignoring these proceedings, we find that disbarment is necessary to stop the abuse of the system hailed on it by Godlove's frivolous, multiple, duplicate filings and to end the disservice to her clients, to opposing parties, to opposing counsel, and to judges presiding over cases in which she is involved.

¶ 27 There is a fine line between zealous advocacy and harassing, frivolous litigation. Godlove has not only overstepped the line, she has trampled it. We have a duty to protect against the type of frivolous litigation undertaken by Godlove. When a lawyer fails to recognize the authority of a court's final order, she must answer for her actions in continuing to relitigate the same issues again and again.

## IX. COSTS AND RULE 9.1

¶ 28 The OBA has filed an application for costs in the amount of $1,994.76. Of this amount $1,661.40 is for transcription fees, and the remainder is for a process server, postage, and PRT member expenses. We note that none of the requested costs are for copying the large number of exhibits whose relevance is not apparent and is not explained. Should the OBA seek reimbursement of costs in the future, it is admonished to provide only exhibits to this Court for which it shows the relevance. Godlove is ordered to pay costs of $1,994.76 within ninety days of the date this opinion becomes final. RGDP, r. 6.16.

¶ 29 Godlove is further ordered to follow Rule 9.1 of the RGDP. Within twenty days from the date this opinion becomes final, Godlove is required to notify all clients via certified mail of her inability to represent them and the necessity for promptly retaining new counsel. Godlove is required to withdraw from all pending cases and file an affidavit of compliance attaching a list of notified clients with the Clerk of the Supreme Court and the Professional Responsibility Commission within twenty-five days after this opinion becomes final.

RESPONDENT DISBARRED FROM THE PRACTICE OF LAW AND ORDERED TO PAY COSTS.

¶ 30 ALL JUSTICES CONCUR.