2002 OK 72

**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION,**
Complainant,

v.

**Stanley Steve PARSONS, Respondent.**

No. SCBD 4659.

Supreme Court of Oklahoma.

Sept. 24, 2002.

Nathan A. Lockhart, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Stanley Steve Parsons, Oklahoma City, pro se.

BOUDREAU, J.

### I. Procedural History

¶1 The Complainant Oklahoma Bar Association (OBA) brought Rule 6 disciplinary proceedings against Respondent attorney, Stanley S. Parsons, alleging one count of professional misconduct. Respondent was admitted to practice law in Oklahoma in 1977 and was so licensed at all times relevant to the events addressed herein. Respondent's official roster address is 3601 N. Classen, Ste. 108, Oklahoma City, Oklahoma 73118.

¶2 The Professional Responsibility Tribunal (Tribunal) conducted a hearing on February 28, 2002, where Respondent stipulated to violations of Rules 1.15(a), (b) and (c) and 8.4(a) and (c) of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.1991 Ch. 1, App. 3–A, and Rules 1.3 and 1.4(b) of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.1991 Ch. 1, App. 1–A. The

Tribunal noted for purposes of mitigation of discipline that Respondent has not been previously disciplined in his 24 years of practice. Upon these findings, the majority of the Tribunal recommends Respondent be suspended for one (1) year and ordered to pay the costs of the investigation and proceedings. The OBA and Respondent agree with this recommendation.

## II. Standard of Review

¶ 3   We review the evidence *de novo* to determine if the allegations of misconduct are established by clear and convincing evidence.   *See State ex rel. Oklahoma Bar Ass'n v. Thomas*, 1995 OK 145, 911 P.2d 907; Rule 6.12(c), RGDP.

## III. Count I

¶ 4   Respondent's alleged misconduct occurred during his representation of Vernsil and Freeman Reed and their three children ("Reeds") who were injured in an automobile accident.   The Reeds sought medical treatment for their injuries from Brooks Clinic Chiropractic ("Brooks").   After the Reeds failed to pay their medical bills, Brooks filed a lien for its services against any settlement or judgment received by the Reeds.

¶ 5   The Reeds subsequently filed a pro se lawsuit against the other driver and Dub Richardson Ford Leasing, who had leased a rental car to the driver.   They secured a default judgment against both defendants. Dub Richardson and its insurance company promptly filed a motion to vacate the default judgment.   The Reeds retained Respondent as their attorney at this time.   Respondent agreed to vacate the default judgment.   Respondent subsequently filed an amended petition, although he never served the driver. During this time, Respondent secured the agreement of Brooks to discount the amount of its claim against the Reeds.[1]

¶ 6   Respondent subsequently settled the Reeds' claim with Dub Richardson's insurer for $5,600.   The insurer issued settlement checks as follows: $2500 payable to "Law Office of Stanley Parson, Freeman Reed, and Brooks Chiropractor"; $1600 payable to " Law Office of Stanley Parson, Vernsil

Reed, and Brooks Chiropracti(sic)";   and three checks, each in the amount of $500, payable to the "Law Office of Stanley Parson and Freeman Reed and Vernsil Reed as Parents of Shemeka, Nekesha, and Freeman Reed, III." The checks issued on behalf of the children did not include Brooks as a payee.   Respondent did not notify Brooks of the settlement or that the settlement checks had been received.

¶ 7   The Reeds endorsed their respective checks and Respondent endorsed his name on each check.   In addition, Respondent, without Brooks' knowledge or consent, wrote "Brooks Chiropractic—by Stanley Parsons" on the checks issued to Vernsil and Freeman Reed. Respondent deposited the entire settlement amount of $5600 into his attorney trust account.   Of that amount, Respondent paid $3,800 to the Reeds as their portion of the settlement and wrote three checks payable to "cash" for $1,500, $200, and $100. The memo section of the three checks written for cash stated "fee earned—Reed case". In total, Respondent received $1,800 as fees. As a result, the total settlement proceed of $5,600 was distributed.

¶ 8   Approximately one year later, Brooks contacted Respondent to discuss payment of the settlement.   After Respondent failed to pay, Brooks filed a petition against Respondent alleging fraud and conversion.   Respondent ultimately signed and approved a journal entry of judgment which required him to pay Brooks $6,500, to be paid in installments of $1,000 per month.   Respondent failed to pay any portion of the judgment except for $194 garnished from his bank account.

¶ 9   At a hearing before the Tribunal, the parties stipulated Respondent's conduct constituted professional misconduct in violation of the ORPC Rules 1.15(a), 1.15(b), 1.15(c), 8.4(a) and 8.4(c), and Rules 1.3 and 1.4(b) of the RGDP.

¶ 10   Parsons is charged with commingling and conversion of funds by improperly taking money entrusted for a specific purpose and applying it toward a claimed attorney fee.   Rule 1.15 requires attorneys

---

1.   Brooks' claim for medical services totaled approximately $9000.   According to the stipula-    tions, Respondent secured a settlement of Brooks' claim for a lesser amount.

who are entrusted with the property of clients and third parties to hold the property with the care required of a "professional fiduciary." An attorney's mishandling of funds belonging to a third party is treated no differently from the approach we take to commingling, conversion or misappropriation of funds belonging to a client. *See State ex rel. Oklahoma Bar Ass'n v. Stutsman*, 1999 OK 62, 990 P.2d 854. In each case, the attorney violates the basic professional duty of trust. *Id.*

¶ 11 Rule 1.15(a) prohibits an attorney from commingling a client's or third person's funds with the attorney's funds. Upon receiving funds in which a client or third person has an interest, Rule 1.15(b) requires an attorney to promptly notify the interested party. This notification allows the party the opportunity for an accounting and, if necessary, the opportunity to dispute the respective interests before disbursement of the funds. Rule 1.15(c) requires an attorney to keep separate a client's or third person's funds in which the lawyer also has an interest until a proper accounting and severance of interests can be made or until any dispute over the quantum of interests in resolved.

¶ 12 We have defined three levels of culpability when evaluating the mishandling of funds: 1) commingling; 2) simple conversion; and 3) misappropriation, i.e., theft by conversion or otherwise. Commingling occurs when a client or third person's monies are combined with the attorney's personal funds. *See State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2000 OK 35, 4 P.3d 1242. Complete separation of the money is required to insure proper accounting. *See State ex rel. Oklahoma Bar Ass'n v. Cummings*, 1993 OK 127, 863 P.2d 1164, *State ex rel. Oklahoma Bar Ass'n v. Johnston*, 1993 OK 91, 863 P.2d 1136. Simple conversion occurs when an attorney applies a client or third person's money to a purpose other than that for which it was entrusted. Rule 1.4(b), RGDP.

¶ 13 The record clearly and convincing establishes (a) Respondent received two settlement checks from the insurance company payable to the Reeds, Brooks and himself, (b) Respondent was aware Brooks had an interest in the funds, (c) Respondent failed to notify Brooks that funds had been received or to promptly deliver the funds to Brooks, (d) Respondent endorsed the settlement checks "Brooks Chiropractic—by Stanley Parsons" without Brooks' knowledge or consent, (e) Respondent distributed the money from his trust account paying the Reeds $3,800 and paying himself $1,800 before an accounting could be completed and any disputes with Brooks resolved, (f) Respondent failed to pay Brooks the amount it was owed, (g) for a period of a year Respondent never contacted Brooks and only addressed the situation when contacted by Brooks, and (h) Respondent failed to offer any explanation for his actions. Accordingly, the evidence before the tribunal establishes by the requisite clear and convincing evidence standard that Respondent commingled funds by failing to keep his money separate from that due Brooks. Respondent is also guilty of simple conversion by withdrawing money from the trust account and paying himself rather than satisfying Brooks' claim.

¶ 14 The third, and most serious infraction, occurs when funds are misappropriated. This happens when an attorney purposefully deprives a client or third person of money by way of deceit and fraud. *See State ex rel. Oklahoma Bar Ass'n v. Johnston*, 1993 OK 91, 863 P.2d 1136. For an attorney to engage in conduct involving dishonesty and deceit is professional misconduct. Rule 8.4(c), ORPC. A finding the attorney intentionally committed such an act requires imposition of the harshest discipline—disbarment. Rule 1.4(c), RGDP.

¶ 15 The record before this Court is not clear as to whether Respondent and Brooks had entered into an agreement as to the manner in which they would divide any recovery in this case, and if so, how the proceeds would be divided. After Respondent negotiated the check, he paid himself an attorney fee of $1800, or one-third (1/3) of the recovery, an amount to which he may have been entitled for securing the settlement. Instead of paying the remaining $3800 to Brooks, he paid that amount to his clients. In explaining his actions in this regard, Respondent testified that his clients were "desperate to get some money out if it". When Respondent's clients asked him how

Brooks' claim would be paid, Respondent responded "I'll take care of that". Although Respondent failed to take care of the matter, we agree with the Tribunal that the record does not establish by the requisite clear and convincing standard that Respondent intended to misappropriate Brooks' money through deceit and fraud.

¶ 16 Accordingly, the record before us provides clear and convincing evidence Respondent violated Rules 1.15(a), (b), and (c) and 8.4(a) and (c) of the ORPC, and Rule 1.4(b) of the RGDP. Such actions by Respondent were contrary to prescribed standards of conduct and are grounds for discipline under Rule 1.3, RGDP.

## IV. Mitigation

¶ 17 There are several factors present in this bar matter that bear on the issue of mitigation. Respondent fully cooperated throughout the course of the investigation and prosecution of the matter. Respondent admitted his conduct did not comply with provisions of the ORPC and RGDP and accepts full responsibility for his actions. Lastly, Respondent has not been previously disciplined in his 24 years of practice. Mitigating circumstances may be considered in evaluating an attorney's conduct and assessing the appropriate discipline. *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2000 OK 35, 4 P.3d 1242, 1255.

## V. Discipline

¶ 18 This Court possesses original and exclusive jurisdiction in bar disciplinary proceedings. Rule 1.1, RGDP. The Tribunal's findings, conclusions of law, or recommendations of discipline are not binding on this Court. *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, 914 P.2d 644, 648. The ultimate responsibility to impose discipline in a case before this court is ours alone. *Id.*

¶ 19 In imposing discipline, our purpose is not to punish the involved attorney, but to inquire into his continued fitness to practice law with a view to safeguarding the public, the courts and the legal profession. *See State ex rel. Oklahoma Bar Ass'n v. Mayes,* 1999 OK 9, 977 P.2d 1073.

¶ 20 The majority of the Tribunal has recommended Respondent be suspended from the practice of law for one year and to pay all costs in this proceeding. The OBA and Respondent agree with this recommendation. This Court has imposed varying degrees of discipline on lawyers who are found guilty of commingling and simple conversion. *See State ex rel. Oklahoma Bar Ass'n. v. Brown,* 1998 OK 123, 990 P.2d 840 (attorney suspended for two years and one day for forging an endorsement on a settlement check and failing to satisfy a lien on the check); *State ex rel. Oklahoma Bar Ass'n. v. Wilcox,* 1997 OK 87, 942 P.2d 205 (attorney suspended for one year for commingling and mishandling client funds and the unauthorized endorsement of a doctor's name to a settlement check); *State ex rel. Oklahoma Bar Ass'n. v. Farrant,* 1994 OK 13, 867 P.2d 1279 (attorney suspended for one year for applying client funds, which were to be used for payment of expenses incurred in hiring of a private investigator, to claimed attorney fees); *State ex rel. Oklahoma Bar Ass'n. v. Johnston,* 1993 OK 91, 863 P.2d 1136 (attorney, who paid himself rather than satisfying all care givers, was suspended for four months for commingling and conversion of a client's funds, making a false statement to the judge, failing to give competent representation, failing to act promptly and failing to communicate with his client); *State ex rel. Oklahoma Bar Ass'n v. Cummings,* 1993 OK 127, 863 P.2d 1164 (attorney suspended for one year for commingling of client funds and conversion of funds by impermissibly taking money entrusted for a specific purpose and applying it to a claimed attorney fee); *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 1991 OK 33, 810 P.2d 826 (attorney suspended for one year for commingling of client funds, using client monies for purposes other than those authorized and failure to make a full and fair disclosure to the Bar).

¶ 21 Respondent's serious misconduct consisting of commingling, conversion and the unauthorized signature of Brooks compels us to impose a one (1) year suspension from the practice of law. In addition, Respondent is ordered to pay the costs of these proceedings in the amount of $254.11, in accordance with Rule 6.16 of the RGDP.

## VI. Conclusion

¶ 22 For the reasons set out in this opinion, Respondent is suspended from the practice of law for one (1) year and is ordered to pay the costs of the investigation and disciplinary proceedings in the amount of $254.11 within ninety (90) days of the effective date of this opinion, pursuant to Rule 6.16 of the RGDP. Respondent's suspension will begin on the effective date of this opinion.

**RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR ONE (1) YEAR FROM THE EFFECTIVE DATE OF THIS PRONOUNCEMENT; AND COSTS IMPOSED.**

¶ 23 HARGRAVE, C.J., HODGES, LAVENDER, SUMMERS, and WINCHESTER, JJ., concur.

¶ 24 OPALA, J., with whom WATT, V.C.J. and KAUGER, J., join dissenting.

**I would suspend the respondent's license for a longer period of time.**